142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
ENGINEERING RESOURCES, INCORPORATED, Plaintiff-Appellee,
v.
CRS STEAM, INCORPORATED and Thomas Leblanc, Defendants-Appellants.
 No. 97-3318.
 United States Court of Appeals, Seventh Circuit.
 Argued February 17, 1998.
Decided April 28, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94 C 6970, William T. Hart, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. RICHARD D CUDAHY and Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 In 1994 Engineering Resources, Inc. ("ERI") filed a six-count complaint against CRS Steam, Inc. ("CRS") and Thomas LeBlanc, its president LeBlanc had been a salesman for ERI from March 1986 to January 1988. In May 1989 he formed CRS. ERI showed that it developed an improved engineering system for removing condensate from facilities that use steam. Its system uses a complement of 25 nozzle sizes for use in condensate removal devices that are installed in steam systems, plus engineering techniques and formulae for applying the nozzle-based devices to almost any steam system from elementary school radiators to nuclear power plants.
 
 
 2
 After working for ERI for almost two years, LeBlanc formed CRS to sell nozzle-based condensate removal devices allegedly identical to secret ERI drawings and using a complement of sizes identical to ERI's and applying engineering techniques also identical to ERI's. The jury and Judge Hart concluded that defendants accomplished these feats because they had misappropriated ERI trade secrets.
 
 
 3
 On December 10, 1986, the jury trial commenced on ERI's claims that (1) defendants had misappropriated trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq., (2) were guilty of breach of contract under Illinois common law, and (3) trade disparagement and interfering with business relations. The jury subsequently returned a verdict awarding ERI $1 million in compensatory damages and $20,000 in punitive damages against CRS and $130,000 in punitive damages against LeBlanc, and the district court entered a judgment in these amounts three days later. In May 1997, defendants filed this appeal.[1]
 
 
 4
 The evidence showed that toward the end of World War II, German engineers, the United States Navy and Flexitallic Co. did pioneering work in orifice-based traps as condensate removal devices. However, such traps had problems allowing steam to escape. In the late 1970s Tim Brown, a former Flexitallic engineer, simplified its system by making it one piece instead of many parts by drilling holes of various sizes in threaded cylindrical steel bars. He named his device the Steam Miser and obtained a patent which he licensed to ERI, which later owned all rights in the product. ERI and its then president realized that the Steam Miser was even more efficient than Mr. Brown believed because it forced condensate through a nozzle or hole with depth, rather than an orifice, thus passing more condensate and less steam. From 1977 to 1986 ERI recorded performances of Steam Misers and discovered that they could be used to replace previous steam traps.
 
 
 5
 ERI sought to reduce the number of nozzle sizes that the Steam Miser was required to carry. Ultimately ERI selected 25 suitable sizes, thus decreasing manufacturing costs and improving quality. ERI altered the Steam Miser's nozzle to make it a modified venturi nozzle rather than a straight nozzle. A venturi nozzle passes more condensate and less steam than a straight nozzle. ERI also made the nozzle removable so that different diameter nozzles could be placed in the same unit. ERI's new product was called the SteamGuard.
 
 
 6
 In its Memorandum Opinion and Order the district court denied CRS's renewed motion for judgment as a matter of law and its request for a new trial. The court held that ERI had established trade secrets under the Illinois Trade Secrets Act because it performed surveying work, applications engineering and customer education before entering into a contract with a customer and that defendants misappropriated that information. Judge Ham observed that ERI had presented substantial evidence that it identified "its applications engineering as confidential." Moreover, the court observed that when defendant LeBlanc, then still in its employ, received a manual from ERI setting forth the basics for its applications engineering. ERI informed him that the information was confidential and only for LeBlanc's use at ERI. He and other ERI employees were required to sign receipts acknowledging the confidentiality of the manuals. Consequently the district court held that ERI's applications engineering information was a trade secret under the Illinois Trade Secrets Act.
 
 
 7
 The district court also held that the jury could reasonably find that ERI could not have discovered defendants' misappropriation prior to November 1989 and that indeed ERI did not discover defendants' misappropriation until March 1990, so the jury could reasonably find that ERI brought suit within the applicable five-year limitations period.
 
 
 8
 The district court next held that defendants were unjustly enriched as a result of using ERI's trade secrets, and that sufficient evidence as to damages had been presented.
 
 
 9
 Defendants assert that they are entitled to a new trial because they were not permitted to reopen their case after ERI had rested. However, the two exhibits they sought to introduce were not brought to the court's attention until one hour before closing arguments. The district judge refused to accept defendants' explanation for their tardiness. The district judge's opinion satisfactorily explains why defendants' tardiness was unjustified and why the jury's award of $1 million in compensatory damages was justified.
 
 
 10
 At the conclusion of its opinion, the district court directed that the following injunction be entered:
 
 
 11
 (a) Defendants Thomas LeBlanc and CRS Steam, Inc. are enjoined from making nozzle sizes within .005 inches of ERI's sizes;
 
 
 12
 (b) Defendants Thomas LeBlanc and CRS Steam, Inc. are enjoined from employing the knowledge of ERI's nozzle sizes, engineering manuals, confidential drawings or other trade secrets of ERI to design or calculate specifications for new nozzle sizes;
 
 
 13
 (c) Defendants Thomas LeBlanc and CRS Steam, Inc. are enjoined from using, selling or disclosing ERI's capacity tables or other applications engineering information; and
 
 
 14
 (d) Defendants Thomas LeBlanc and CRS Steam, Inc. are enjoined from using, manufacturing, selling installing or shipping of the "in-line unit" or "radiator insert kit"; and
 
 
 15
 (e) Defendants Thomas LeBlanc and CRS Steam, Inc. are ordered to assign forthwith to ERI all right and title to the design and specifications for the in-line unit and radiator kit, including defendants' interest in patents No 5,123,452 and No. 5,120,336.
 
 
 16
 (4) Motion of plaintiff Engineering Resources, Inc. for attorney fees (99) is granted in part and denied in part. No attorney fees are awarded to plaintiff engineering Resources, Inc. $9,493.33 in costs are awarded to engineering Resources, Inc.
 
 
 17
 CRS and LeBlanc argue on appeal that the injunction is overly broad and will utterly preclude them from participating in the business of selling condensate removal systems.
 
 
 18
 After considering the oral arguments of the parties and the briefs and record before us, we conclude that the statute of limitations was no bar and that the damages awarded were appropriate and resulted from defendants' misappropriation of ERI's trade secrets. Finally, the injunction was justified, and the trial court adequately explained why the restrictions imposed were "only as broad as necessary to protect the rights of the plaintiff." The court made it perfectly clear that the defendants could ask the court for a modification of the injunction in the future if they believed that they had derived nozzle sizes, applications engineering, or capacity tables similar to ERI's through methods not dependent upon appropriated trade secrets.
 
 Judgment affirmed.[2]
 
 
 [1]
 In October 1997 the bankruptcy judge considering the defendants' bankruptcy granted their motion to lift the automatic stay entered on June 19, 1997, pursuant to Bankruptcy Code § 362(d)(1). This permitted defendants to continue with the appeal in this case
 
 
 [2]
 We note with approval that several times in his opinion, Judge Hart stated he would entertain applications for modifications of the decree